## LEIN v. MYERS et al.

### (Circuit Court, S. D. New York. November 14, 1899.)

**1. PATENTS—SUIT FOR INFRINGEMENT—BURDEN OF PROOF AS TO ANTICIPATION.**
Where the device of the patent in suit is disclosed by another antedating it by more than two years, the burden rests upon the complainant to prove beyond a reasonable doubt that his was the prior invention.

**2. SAME—PATENTABLE INVENTION—IMPROVEMENTS.**
The public policy which is the foundation of the patent laws should constrain the courts to sustain the validity of a patent, although the invention is one of limited scope and minor importance, where it shows the exercise of invention, and is a distinct improvement over the structures of the prior art.

**3. SAME—INFRINGEMENT—MATTRESS FRAME.**
The Lein patent, No. 615,073, for a mattress frame, as to claim 1 *held* not anticipated by the Taber design patent, No. 26,245, on the ground that Lein's invention was prior. Also *held* valid and infringed.

This was a suit in equity by John P. Lein against Solomon A. Myers and Daniel I. Tompkins, composing the firm of S. A. Myers & Co., for infringement of a patent. On final hearing.

Clifton V. Edwards, for complainant.

Milton E. Robinson, for defendants.

COXE, District Judge. This is an equity action for infringement of letters patent No. 615,073, granted to the complainant November 29, 1898, for a mattress frame. The application was filed August 7, 1897. The specification states that the object of the patentee is to construct a cheap and simple frame in which the smallest possible surface will be exposed to the accumulation of dust, dirt or vermin and in which the weight put upon the mattress is so distributed that the greater the weight the more firmly will the frame be held together. The first claim is involved. It is in the following words:

"(1) A socket for a mattress frame comprising a part adapted to engage the upper surface of the side rails of the mattress frame, a horizontally extending shoulder formed on one side thereof, a vertically extending bracket at the outer end of said shoulder, a similar bracket at the point where said shoulder engages the side rail, and means for securing the end bar of the mattress to the upper ends of said brackets substantially as described."

The defenses are anticipation, lack of patentable novelty and noninfringement. It is conceded by the complainant that the subject-matter of the first claim is disclosed in the design patent No. 26,245 for a corner block for mattress frames granted to Winfield H. Taber, November 3, 1896, on application filed August 10, 1896. The Taber patent antedating the patent in suit by more than two years, the burden is shifted to the complainant to prove beyond a reasonable doubt that his was the prior invention. Thayer v. Hart (C. C.) 20 Fed. 693, and cases cited; The Barbed-Wire Patent, 143 U. S.

275, 285, 12 Sup. Ct. 443, 450. The complainant has succeeded in sustaining this burden. He testifies that he commenced experimenting in December, 1894, and in the spring of 1895 had a casting made which embodies the invention of the first claim. This casting is in evidence. A few months afterwards he made another pattern from which a second and more satisfactory casting was made which was used in a mattress frame in the latter part of 1895 or early in 1896. In brief, the testimony is to the effect that he conceived the invention in the early part of 1895 and completed it in the latter part of that year or in the early part of the succeeding year. He is corroborated by three witnesses who were with him during the period in question. There is nothing to impeach the honesty and intelligence of these witnesses and they were speaking of events so recent that they can hardly be mistaken as to the facts. This is not one of those cases which so often occur where a witness depends upon his unaided memory to describe structures which he has not seen for more than a decade.

A situation very similar to the present was examined by this court in Webbing Co. v. Nicholls (C. C.) 70 Fed. 1009. The reasons there given for accepting the evidence of prior invention apply to the present case and need not be repeated. It is enough that the testimony is fair and reasonable and is wholly uncontradicted.

The latest date that can be fixed for the Lein invention is several months prior to the Taber patent. Two other exhibits are subsequent to the date of the Lein invention. These it is unnecessary to consider. None of the prior patents shows the device of the claim in question. They show various ways of supporting the mattress but nothing which is the equivalent of the Lein socket. Lein was the first to construct this form of support and it is plain that it possesses many advantages over pre-existing structures. The mattress is, in appearance, more symmetrical and attractive than any which preceded it; it is cheap, strong and able to stand the severest tension likely to be put upon it; it is supported directly on the bed frame and dispenses with bed slats and all wooden structures which attract and harbor vermin. The fabric is raised five inches above the frame and the socket provides a very strong connection for the side and end bars. In brief, it is a marked improvement over the structures of the prior art. It is, of course, true that the invention is one of limited scope and minor importance. It is not a great invention and should the court see fit to strike down the patent ample authority for such action can be found among the reported cases. On the other hand the more liberal, and, in the opinion of the court, the wiser and more progressive rule, established by a long line of clear and convincing judgments, of which The Barbed-Wire Patent, supra, and Machine Co. v. Lancaster, 129 U. S. 263, 9 Sup. Ct. 299, are conspicuous examples, leads to a conclusion sustaining the patent.

It is seldom in this age of intense material activity that an inventor strikes out upon a path never traveled before and startles the world by an entirely new discovery. It is the constant addition of new features and improvements to old methods and structures

which has advanced science and the useful arts to their present state of perfection. In this marvelous march of progress the American workman has always held the advanced position, due to the encouragement he has received from a liberal and enlightened application of our patent laws. A recent writer of recognized ability and wide experience says upon this subject:

"Public policy is the very foundation of the patent system, and the only reason for its existence. The theory of the constitution is that patents are granted, not as a reward for the past, but as a stimulus for the future—to encourage the making of further improvements and discoveries. But if public policy requires them to be granted for that purpose it equally requires them to be sustained and enforced. The absurdity of trying to encourage invention by granting patents and then holding them invalid is too obvious for comment. * * * It needs no argument to show that the courts should exercise exceptional care to protect the inventors of minor improvements in the arts. True, their claims are often difficult to properly construe, because they closely approach the invisible line which separates patentable invention from mere skill and judgment; but that is no reason why the benefit of the doubt should always be given to the infringer. * * * Public policy is far better promoted by the friendliness which would go too far in sustaining patents than by the cold indifference which would not go far enough; for the stimulus to the making of improvements is only increased by the former, while it is deadened and destroyed by the latter."

There is little difficulty in according to Lein a higher place than that of the skilled mechanic. It requires no expert knowledge to perceive that his device is distinctly an advance over those which preceded it. This is true from whatever point of view the subject is approached, and others should not be permitted to appropriate the results of his genius and labor.

There is hardly room for discussion upon the question of infringement. Indeed, it is not easy to see why the defendants are not concluded by their own admissions. Having alleged that Taber's device is identical with Lein's and that theirs is identical with Taber's, how can they escape the conclusion that it is also identical with Lein's? But however this may be there is no question upon the proofs that their construction has all the elements of the first claim and is an infringement thereof. The complainant is entitled to a decree.